1

**BURSOR & FISHER, P.A.**

2

Neal J. Deckant (State Bar No. 322946)
Frederick J. Klorczyk III (State Bar No. 320783)

3

1990 North California Blvd., Suite 940
Walnut Creek, CA 94596

4

Telephone: (925) 300-4455
Facsimile:  (925) 407-2700

5

E-Mail:  ndeckant@bursor.com

6

       fklorczyk@bursor.com

7

*Attorneys for Plaintiff*

8

**UNITED STATES DISTRICT COURT**

9

**EASTERN DISTRICT OF CALIFORNIA**

10

11

KENNETH GLASS, individually and on behalf
of all others similarly situated,

12

                              *Plaintiff,*

13

        v.

14

GLOBAL WIDGET, LLC d/b/a HEMP
BOMBS,

15

16

                           *Defendant.*

17

Case No. _____

**CLASS ACTION COMPLAINT**

**<u>JURY TRIAL DEMANDED</u>**

18

19

20

21

22

23

24

25

26

27

28

---

Plaintiff Kenneth Glass brings this action on behalf of himself and all others similarly situated against Defendant Global Widget, LLC d/b/a Hemp Bombs ("Global Widget").  Plaintiff makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to the allegations specifically pertaining to himself, which are based on personal knowledge.

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and Plaintiff, as well as most members of the proposed class, is a citizen of a state different from Defendant.  This Court also has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

2.      Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District.  Plaintiff Glass is a citizen of California, resides in this District, and purchased Hemp Bombs-branded products from Defendant in this District.  Moreover, Defendant distributed, advertised, and sold Hemp Bombs-branded products, which are the subject of the present complaint, in this District.

## NATURE OF THE ACTION

3.      This is a putative class action lawsuit on behalf of purchasers of Hemp Bombs-branded products against Defendant for manufacturing, distributing, and selling underfilled cannabidiol ("CBD") products (collectively, the "CBD Products" or "Products," as enumerated below).  CBD is a highly sought-after dietary supplement that is commonly used to treat anxiety, insomnia, depression, diabetes, PTSD, and chronic pain.  CBD is sold in a variety of forms, including compounds, tinctures, and edibles.  CBD can be administered by inhalation of smoke or vapor.  Alternatively, food and beverage items can be infused with CBD as an alternative means of ingesting the substance.

4.      Defendant repeatedly overstates the quantity of CBD on its Products' labeling and packaging.  As discussed below, the labeling and packaging of the CBD Products are replete with representations and warranties, namely that the Products purportedly contain "25mg," "50mg," "75mg," "80mg," "100mg," "125mg," "160mg," "200mg," "225mg," "250mg," "300mg," "375mg," "450mg," "600mg," "750mg," "900mg," "1000mg," "1500mg," "2000mg," or "4000mg" of CBD (collectively, the "CBD Claims").  However, the CBD Products contain only a fraction of the CBD advertised on Defendant's website and on the Products' labeling and packaging.  For example, pursuant to independent lab testing commissioned by Plaintiff and performed by Anresco Laboratories, the "Hemp Bombs CBD Gummies," which purports to contain "75mg of CBD" in the bottle, actually contains only 35.3mg of CBD per bottle.  This represents an underfill of approximately 53%.  By misrepresenting the true quantity of CBD in its CBD Products, Defendant is able to charge a substantial price premium on account of these fictitious CBD quantity claims.

5.      For all the reasons set forth herein, including but not limited to Defendant's misrepresentations regarding the quantity of CBD its products, Plaintiff seeks relief in this action individually, and as a class action on behalf of similarly situated purchasers of Defendant's products, for: (i) breach of express warranty; (ii) breach of the implied warranty of merchantability; (iii) unjust enrichment; (iv) fraud; (v) violation of the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, et seq.; (vi) violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq.; (vii) violation of the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, et seq.; and (viii) violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §§ 501.201, et seq.

**THE PARTIES**

6.      Plaintiff Kenneth Glass is a citizen of California who resides in Wheatland, California.  Throughout 2019, Plaintiff Glass purchased many of Defendant's Hemp Bombs CBD products.  Most recently, Plaintiff Glass purchased "Hemp Bombs CBD Gummies" from a Chevron gas station in Wheatland, California in July 2019.  Before purchasing his Hemp Bombs-

branded Products, Plaintiff Glass reviewed information about the Products, including the quantity of CBD purportedly contained in each.  When purchasing his CBD Products, Plaintiff Glass also reviewed the accompanying labels, disclosures, warranties, and marketing materials, and understood them as representations and warranties by Defendant that the Products contained the quantities of CBD advertised.  Plaintiff Glass relied on these representations and warranties in deciding to purchase Defendant's CBD Products over comparable products.  Accordingly, these representations and warranties were part of the basis of the bargain, in that he would not have purchased the CBD Products on the same terms had he known these representations were not true. In making his purchases, Plaintiff Glass paid a substantial price premium due to the false and misleading CBD Claims.  However, Plaintiff Glass did not receive the benefit of his bargain, because Defendant's CBD Products do not contain anywhere near the quantities of CBD advertised.  Plaintiff Glass also understood that in making the sale, his retailer was acting with the knowledge and approval of Defendant and/or as the agent of Defendant.  Plaintiff Glass further understood that each purchase involved a direct transaction between himself and Defendant, because his CBD Products came with packaging and other materials prepared by Defendant, including representations and warranties regarding the CBD Claims.

7.      Defendant Global Widget, LLC ("Global Widget"), is a Florida corporation with its principal place of business in Tampa, Florida.  Global Widget manufactures, sells, and globally distributes Hemp Bombs-branded products, and is responsible for the advertising, marketing, and packaging of CBD-infused edibles, capsules, oils, topicals, and vape products, including the CBD Products.  Global Widget manufactured, marketed, and sold the CBD Products during the relevant Class period.  The planning and execution of the advertising, marketing, labeling, packaging, testing, and/or corporate operations concerning the CBD Products and the CBD Claims was primarily carried out at Global Widget's headquarters and facilities within Florida, as is most, or all, of the CBD Products' manufacturing and assembly.

8.      Plaintiff reserves the right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of

Defendant who has knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein.

## FACTS COMMON TO ALL CLAIMS

### A.       General Explanation Of CBD Products

9.       CBD is a highly sought-after dietary supplement with medicinal properties.  CBD is used to treat anxiety, insomnia, depression, diabetes, PTSD, and chronic pain.  CBD can be taken into the body in multiple ways, including by inhalation of smoke or vapor, as an aerosol spray into the cheek, and by mouth.  Food and beverage items can be infused with CBD as an alternative means of ingesting the substance.

10.       CBD, which stands for cannabidiol, is a naturally occurring phytocannabinoid found in certain strains of hemp.  Food and beverage products containing CBD were introduced in the United States in 2017.  Hemp products that contain trace amounts of THC (less than 0.3%) have been declared by the United States Food and Drug Administration ("FDA") as generally recognized as safe ("GRAS").

11.       The production, sale, and distribution of CBD is a booming industry that is "gaining in popularity among consumers with the legal CBD market projected to surpass $23 billion in annual U.S. sales by 2023," according to Forbes.  With large retailers like CVS, Walgreens, and Kroger having entered the market, the CBD industry is undergoing rapid growth.  Yet, given that the "industry has little to no regulation with no one watching what's going into the product[,]" this rapid expansion has produced negative consequences for consumers.  For instance, after commissioning lab testing for "35 CBD products from seven different companies[,]" NBC investigators discovered that "20 of [the 35 samples tested] had less than half of the amount of CBD advertised on the label" and "[s]ome samples had no CBD at all."

### B.       Defendant's CBD Products

12.       The CBD Products at issue include the following products from Defendant, all of which prominently feature the amount of CBD (e.g. 75mg) on the front label:

A.    All "CBD Gummies" labeled with CBD Claims, including all flavors and sizes of Defendant's "Original Gummies," "High-Potency Gummies," and "Sleep Gummies:"[1]



B.    All "CBD Capsules" labeled with CBD Claims, including all flavors and sizes of "Hemp Bombs CBD Capsules HP" and "Hemp Bombs CBD Capsules:"[2]



---

[1] The CBD Gummies are offered in 5-Count, 15-Count, 30-Count, and 60-Count sizes and range from 75mg CBD to 1500mg CBD.  *See* https://hempbombs.com/cbd-gummies/ (last visited 8/19/19).

[2] The CBD Capsules are offered in 5-Count, 15-Count, 30-Count, and 60-Count sizes and range from 75mg CBD to 1500mg CBD.  *See* https://hempbombs.com/cbd-capsules/ (last visited 8/19/19).

C.   All "CBD Syrups," "CBD Jolly Bombs Lollipops," and "CBD Max Chill

Relaxation Shots" labeled with a CBD Claim:[3]



D.   All "CBD Oils" labeled with CBD Claims:[4]



E.   All "CBD E-Liquids" and "CBD E-Liquid Additives" labeled with CBD

Claims: [5]

---

[3] The CBD Syrup is available in three strengths, 100mg CBD per 4-ounce bottle, 300mg CBD per 4-ounce bottle, and 1000mg CBD per 4-ounce bottle.  *See* https://hempbombs.com/cbd-syrup/. The CBD Lollipops offer 40mg per lollipop and are available in Cherry, Watermelon, Green Apple, and Pink Lemonade flavors.  *See* https://hempbombs.com/cbd-lollipops/.  The CBD Max Chill Relaxation Shot offers 75mg CBD per 2-ounce bottle.  https://hempbombs.com/product/cbd-max-chill-relaxation-shot/.
[4] The CBD Oils are offered in three flavors (Unflavored, Peppermint, and Watermelon), and range in CBD from 125mg per 30ml bottle to 4,000mg per 30ml bottle).  *See* https://hempbombs.com/cbd-oils/ (last visited 8/19/19).
[5] The CBD E-Liquids and CBD E-Liquid Additives come in 16.5ml bottles promising 75mg CBD, 16.5ml bottles promising 250mg CBD, 60ml bottles promising 300mg CBD, 60ml bottles promising 1,000mg CBD, 60ml bottles promising 2,000mg CBD, and 120ml bottles promising 4,000mg CBD.  *See* https://hempbombs.com/cbd-e-liquid/; https://hempbombs.com/cbd-e-liquid-additives/ (last visited 8/19/19).  The CBD E-Liquids come in a range of flavors, including: "Arctic Spearmint Blast," "Bangin' Fruity Bedrock," "Crisp Honeydew Melon," "Crushed Pineapple Paradise," "Exotic Watermelon Kush," "Glazed Chocolate Donut," "Roasted Colombian Coffee," "Strawberry Milk," "Sugar Cookie Kryptonite," "Sweet Mango Seduction," "Vanilla

75mg CBD 16.5ml E-Liquid Additive

250mg CBD 16.5ml E-Liquid Additive

300mg CBD 60ml E-Liquid Additive

1000mg CBD 60ml E-Liquid Additive

2000mg CBD 60ml E-Liquid Additive

4000mg CBD 120ml E-Liquid Additive

F.    All "CBD Vape Tanks" labeled with a CBD Claim of 125-1000mg of CBD:[6]



125mg CBD Vape Tank

300mg CBD Vape Tank

1000mg CBD Vape Tank

G.    All "CBD Disposable Vape Pens" labeled with a CBD Claim of 125mg of CBD:[7]

Cupcake Swirl," "Whipped Marshmallow Dream," "Wild Blueberry Jam," "Electric Blue Raspberry," and "Juicy Southern Peach."

[6] The CBD Vape Tanks come in a range of flavors, including:  "Arctic Spearmint Blast," "Bangin' Fruity Bedrock," "Crisp Honeydew Melon," "Crushed Pineapple Paradise," "Exotic Watermelon Kush," "Glazed Chocolate Donut," "Roasted Colombian Coffee," "Strawberry Milk," "Sugar Cookie Kryptonite," "Sweet Mango Seduction," "Vanilla Cupcake Swirl," "Whipped Marshmallow Dream," "Wild Blueberry Jam," "Electric Blue Raspberry," and "Juicy Southern Peach."  *See* https://hempbombs.com/cbd-vape-tank-cartridges/ (last visited 8/19/19).

[7] The CBD Disposable Vape Pens come in a range of flavors, including:  "Exotic Watermelon Kush," Wild Blueberry Jam," and "Bangin Fruity Bedrock."  *See* https://hempbombs.com/cbd-vape-pens/ (last visited 8/19/19).



H.    All "CBD Topical" products labeled with a CBD claim, including "Hemp Bombs CBD Pain Rub," "Hemp Bombs CBD Beard Oil," "Hemp Bombs CBD Beard Balm," "Hemp Bombs CBD Tattoo Ointment:"[8]



---

[8] The CBD Pain Rub comes in 1-ounce and 4-ounce sizes, each promising 50mg and 200mg of CBD per tub, respectively.  *See* https://hempbombs.com/cbd-pain-freeze/ (last visited 8/19/19). The CBD Beard Oil promises 25mg of CBD per 15ml bottle.  *See* https://hempbombs.com/product/cbd-beard-oil/ (last visited 8/19/19).  The CBD Beard Balm promises 25mg of CBD per 1-ounce tin.  *See* https://hempbombs.com/product/cbd-beard-balm/ (last visited 8/19/19).  The CBD Tattoo Ointment comes in 1-ounce and 4-ounce sizes which promise 50mg and 200mg of CBD, respectively.  *See* https://hempbombs.com/cbd-tattoo-ointment/ (last visited 8/19/19).

C.      **Defendant's Products Do Not Contain The Quantity Of CBD They Are Labeled To Contain**

13.     The CBD Claims are false and misleading.  As independent lab testing reveals, the true quantity of CBD in the CBD Products is only a small fraction of Defendant's representations. Plaintiff's counsel commissioned Anresco Laboratories to perform independent testing of Defendant's products, which show that the Products do not contain the amount of CBD promised in the CBD Claims.  Specifically, pursuant to lab test results dated June 4, 2019 Defendant's "Hemp Bombs CBD Gummies," which is labeled as containing "75mg" of CBD, actually contains a total of 35.3mg.  This is a reduction of 52.9%.

| CBD Product | CBD Claim | Actual CBD Content | % Difference |
|---|---|---|---|
| Hemp Bombs CBD Gummies (5-Count) | **75mg** | **35.3mg** | **-52.9%** |

14.     By permanently marking the CBD Products with their purported CBD content, Defendant knew that the CBD Claims are false and misleading, yet still advertised, labeled, and packaged the CBD Products with the false and misleading CBD Claims.

15.     Simply put, Defendant's CBD Claims are a farce.  Defendant knowingly prepared the material on its website and product labels to misrepresent the true quantity of CBD in the CBD Products.

## CLASS ACTION ALLEGATIONS

16.     Pursuant to Fed. R. Civ. P. 23, Plaintiff seeks to represent a class defined as all persons in the United States who purchased CBD Products with a CBD Claim from Defendant (the "Class").  Excluded from the Class is Defendant Global Widget, LLC, Defendant's subsidiaries, affiliates, officers, directors, assigns and successors, and any entity in which it has a controlling interest, and the Judge to whom this case is assigned and any member of her immediate family.

17.     Plaintiff also seeks to represent a subclass defined as all Class members in California (the "California Subclass" or "Subclass").

18.     Members of the Class are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Class number in the hundreds of thousands.  The precise number of Class members and their identities are unknown to Plaintiff at this time but will be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant's and third-party retailers and vendors.

19.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to:

(a)     whether the CBD Claims on Defendant's CBD Products are false and misleading;

(b)     the actual amount of CBD in the CBD Products;

(c)     whether Defendant engaged in false and/or deceptive advertising;

(d)     whether Defendant has been unjustly enriched by its conduct;

(e)     whether Class members have sustained monetary loss and the proper remedy for and measure of that loss;

(f)     whether Plaintiff and Class members are entitled to declaratory and injunctive relief;

(g)     the number of CBD Products sold to consumers; and

(h)     whether, as a result of Defendant's misconduct as alleged herein, Plaintiff and Class members are entitled to restitution, injunctive, and/or monetary relief and, if so, the amount and nature of such relief.

20.     Plaintiff's claims are typical of the claims of Class members because Plaintiff purchased a CBD Product in reliance on the representations and warranties described above, and suffered a loss as a result of those purchases.

21.     Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained counsel

competent and experienced in prosecuting class actions, and he intends to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiff and his counsel.

22.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and the Class members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I
### (Breach Of Express Warranty)

23.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

24.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and the Subclass against Defendant.

25.     In connection with the sale of the CBD Products, Defendant issued written warranties.  Defendant, as the designer, manufacturer, marketer, distributor, and/or seller of the CBD Products, expressly warranted that the Products were fit for their intended purpose by making promises and affirmations of fact on their Products' labeling and packaging, including the CBD Claims.

26.     The affirmations of fact and promises made by Defendant to Plaintiff and the Class regarding the CBD Products became part of the basis of the bargain between Defendant and

Plaintiff and the Class and Subclass, thereby creating an express warranty that the CBD Products would conform to those affirmations of fact, representations, promises, and descriptions.

27.    The CBD Products do not, in fact, contain the amount of CBD promised in the CBD Claims.  Instead, the CBD Products contain only a fraction of the CBD advertised on Defendant's website and on the Products' labeling and packaging.

28.    Plaintiff Glass and members of the Class suffered economic injury as a direct and proximate result Defendant's breach because: (a) they would not have purchased the CBD Products on the same terms if they knew that the Products had been falsely labeled as alleged herein; (b) they paid a price premium for the CBD Products based on Defendant's express warranties; and (c) the CBD Products did not have the characteristics, uses, or benefits as promised by Defendant in the CBD Claims.  As a result, Plaintiff and members of the Class and the Subclass have been damaged either in the full amount of the purchase price of the CBD Products or in the difference in value between the Products as warranted and the Products as sold.

29.    On July 19, 2019, prior to filing this action, Defendant was served with a pre-suit notice letter that complied in all respects with U.C.C. §§ 2-313, 2-607.  Plaintiff's counsel sent Defendant a letter advising it that it breached an express warranty and demanded that it cease and desist from such breaches and make full restitution by refunding the monies received therefrom.  A true and correct copy of Plaintiff's counsel's letter is attached hereto as Exhibit A.

## COUNT II
### (Breach Of The Implied Warranty Of Merchantability)

30.    Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

31.    Plaintiff brings this claim individually and on behalf of the members of the proposed Class and the Subclass against Defendant.

32.    Defendant is and was at all relevant times a "merchant" within the meaning of the Uniform Commercial Code ("UCC").  Defendant manufactured, distributed, and marketed the CBD Products, which are "good[s]" within the meaning of the UCC.  Consequently, Defendant

impliedly warranted that the CBD Products were merchantable, including that they could pass without objection in the trade under the contract description, that they were fit for the ordinary purposes for which such goods are used, that they were of fair average quality within the description, that they were adequately labeled, and that they would conform to the promises or affirmations of fact made on the Products' labeling and packaging.  However, each of these implied warranties were false with respect to the goods of the kind sold to Plaintiff and Class members.

33.     In reliance upon Defendant's skill and judgment and the implied warranties above, Plaintiff and Class members purchased the CBD Products.

34.     The CBD Products were not altered by Plaintiff or Class members in a manner that would reduce the quantity of CBD the products contain.

35.     The CBD Products were underfilled when they left the exclusive control of Defendant.

36.     Defendant knew the CBD Products would be purchased and used by Plaintiff and members of the Class without additional testing by Plaintiff and Class members. The CBD Products were not of fair average quality within their description, were not adequately labeled, and did not conform to the promises or affirmations of fact made on the Products' labels.

37.     More specifically, Defendant breached its implied warranty of merchantability to Plaintiff and the Class because the CBD Products would not pass without objection in the trade in that they do not conform to CBD Claims made on the Products' labels.  Instead, the CBD Products contain substantially less CBD than they were labeled to contain, and Plaintiff and Class members did not receive the goods as warranted.

38.     Plaintiff Glass and members of the Class suffered economic injury as a direct and proximate result Defendant's breach of the implied warranty because: (a) they would not have purchased the CBD Products on the same terms if they knew that the Products had been falsely labeled as alleged herein; (b) they paid a price premium for the CBD Products based on Defendant's warranties; and (c) the CBD Products did not have the characteristics, uses, or benefits

as promised by Defendant in the CBD Claims.  As a result, Plaintiff and members of the Class and the Subclass have been damaged either in the full amount of the purchase price of the CBD Products or in the difference in value between the Products as warranted and the Products as sold.

### COUNT III
**(Unjust Enrichment)**

39.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

40.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and the Subclass against Defendant.

41.     Plaintiff and Class members conferred a benefit in the form of monies paid on Defendant by purchasing underfilled CBD Products.

42.     Defendant voluntarily accepted and retained this benefit.

43.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff and Class members' purchases of the CBD Products.  Retention of those moneys under these circumstances is unjust and inequitable in light of the misrepresentations of fact made by Defendant in labeling, packaging, marketing, and advertising the CBD Products, including the CBD Claims.  These misrepresentations caused injuries to Plaintiff and Class members because they would not have purchased the CBD Products if the true facts were known.

44.     Because this benefit was obtained unlawfully, namely by selling and accepting compensation for underfilled CBD Products, it would be unjust and inequitable for Defendant to retain it without paying the value thereof.  Accordingly, Defendant must pay restitution to Plaintiff and Class members for its unjust enrichment, as ordered by the Court.

### COUNT IV
**(Fraud)**

45.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

46.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class and the Subclass against Defendant.

47.     As discussed above, Defendant provided Plaintiff and Class members with false or misleading material information about the CBD Products manufactured, distributed, and sold by Defendant.  For example, Defendant made promises and affirmations of fact in labeling, packaging, marketing, and advertising the CBD Products, including the CBD Claims.

48.     As indicated above, however, these representations are false as the CBD Products are underfilled and contain approximately 53% less CBD than Defendant claims.

49.     The misrepresentations and omissions of material fact made by Defendant, upon which Plaintiff and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiff and Class members to purchase the CBD Products.

50.     By virtue of labeling its products with the CBD Claims, Defendant knew or should have known the CBD Claims were false, but continued to manufacture and sell underfilled CBD Products in the retail and wholesale markets.

51.     During the relevant time period, Plaintiff and Class members were unaware that the CBD Products were underfilled.

52.     The fraudulent actions of Defendant caused damage to Plaintiff and Class members, who are entitled to damages and other legal and equitable relief as a result.

53.     As a result of Defendant's willful and malicious conduct, punitive damages are warranted.

**COUNT V**
**(Violation Of The California Consumers Legal Remedies Act,**
**Cal. Civ. Code §§ 1750, *et seq*.)**

54.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

55.     Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

56.     California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(5), prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses,

benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."

57.     California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(7), prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

58.     California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(9), prohibits "[a]dvertising goods or services with intent not to sell them as advertised."

59.     Defendant violated these provisions by making the misrepresentations alleged above, including the CBD Claims.

60.     Plaintiff Glass and the California Subclass suffered economic injury as a direct and proximate result Defendant's violation because: (a) they would not have purchased the CBD Products on the same terms if they knew that the Products had been falsely labeled as alleged herein; (b) they paid a price premium compared to products without the misrepresentations alleged herein; and (c) the CBD Products did not have the characteristics, ingredients, uses, benefits, or quantities as promised.

61.     On or about July 19, 2019, prior to filing this action, a CLRA notice letter was served on Defendant that complies in all respects with California Civil Code § 1782(a).  Plaintiff Glass sent Defendant a letter via certified mail, return receipt requested, advising Defendant that it is in violation of the CLRA and demanding that Defendant cease and desist from such violations and make full restitution by refunding the monies received therefrom.  A true and correct copy of Plaintiff Glass's letter is attached hereto as <u>Exhibit A</u>.

62.     On behalf of himself and other members of the California Subclass, Plaintiff Glass seeks to enjoin the unlawful acts and practices described herein and to recover actual damages, restitution, and reasonable attorneys' fees.

<u>**COUNT VI**</u>
**(Violation Of The California Unfair Competition Law,**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.*)**

63.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

64.     Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

65.     Defendant is subject to California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*  The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

66.     Defendant's misrepresentations and other conduct, described herein, violated the "unlawful" prong of the UCL by violating the CLRA as described herein; the FAL as described herein; and Cal. Com. Code § 2607.

67.     Defendant's misrepresentations and other conduct, described herein, violated the "unfair" prong of the UCL in that its conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits.

68.     Defendant violated the "fraudulent" prong of the UCL by making misrepresentations about the CBD Products, as described herein.

69.     Plaintiff Glass and the California Subclass suffered economic injury as a direct and proximate result Defendant's violation because: (a) they would not have purchased the CBD Products on the same terms if they knew that the Products had been falsely labeled as alleged herein; (b) they paid a price premium compared to products without the misrepresentations alleged herein; and (c) the CBD Products did not have the characteristics, ingredients, uses, benefits, or quantities as promised.

70.     On behalf of himself and other members of the California Subclass, Plaintiff Glass seeks to enjoin the unlawful acts and practices described herein and to recover actual damages, restitution, and reasonable attorneys' fees.

**<u>COUNT VII</u>**
**(Violation Of The California False Advertising Law,**
**Cal. Bus. & Prof. Code §§ 17500, *et seq.*)**

71.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

72.     Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

73.      California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, ... in any advertising device ... or in any other manner or means whatever, including over the Internet, any statement, concerning ... personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

74.      Defendant committed acts of false advertising, as defined by §17500, by making the misrepresentations alleged above, including the CBD Claims.

75.     By virtue of labeling its products with the CBD Claims, Defendant knew or should have known the CBD Claims were false, but continued to manufacture and sell underfilled CBD Products in the retail and wholesale markets.

76.     Defendant's actions in violation of § 17500 were false and misleading such that the general public is and was likely to be deceived.

77.     Plaintiff Glass and the California Subclass suffered economic injury as a direct and proximate result Defendant's violation because: (a) they would not have purchased the CBD Products on the same terms if they knew that the Products had been falsely labeled as alleged herein; (b) they paid a price premium compared to products without the misrepresentations alleged

herein; and (c) the CBD Products did not have the characteristics, ingredients, uses, benefits, or quantities as promised.

78.     On behalf of himself and other members of the California Subclass, Plaintiff Glass seeks to enjoin the unlawful acts and practices described herein and to recover actual damages, restitution, and reasonable attorneys' fees.

**COUNT VIII**
**(Violation Of The Florida Deceptive And Unfair Practices Act,**
**Fla. Stat. §§ 501.201, *et seq*.)**

79.     Plaintiff hereby incorporates by reference the allegations contained in all preceding paragraphs of this complaint.

80.     Plaintiff brings this claim individually and on behalf of the members of the Class and California Subclass against Defendant.

81.     Class members are "consumers" within the meaning of the Florida Unfair and Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.203(7).

82.     Defendant is engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

83.     The FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce...." Fla. Stat. § 501.204(1).  Defendant participated in unfair and deceptive trade practices that violated the FDUTPA as described herein.

84.     In the course of business, Defendant actively concealed information reasonable consumers need to know before purchasing Defendant's products.

85.     Defendant knew or should have known that the CBD Products did not contain anywhere near the quantity they were labeled and advertised as containing.  The Class was deceived by Defendant's misrepresentation into believing that the CBD Products contained substantially more CBD than they are labeled to contain.

86.     Defendant made material misrepresentations about the quantity of CBD in the CBD Products that were false and misleading.

87.     Defendant knew or should have known its conduct violated the FDUPTA.

88.     Defendant's unfair or deceptive acts or practices were likely to deceive reasonable consumers, including the Class, about the true nature of the CBD Products it manufactures, advertises, sells, and distributes.

89.     The Class suffered ascertainable loss caused by Defendant's material misrepresentations. But for Defendant's deceptive and unfair conduct, Plaintiff and the Class would not have purchased the CBD Products.

90.     As a direct and proximate result of Defendant's FDUPTA violations, Plaintiff and the Class suffered injury in fact and actual damages.

91.     Plaintiff and the Class also seek an order enjoining Defendant's unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the FDUPTA.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

a.     For an order certifying the Class and the California Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as a representative of the Class and Subclass and Plaintiff's attorneys as Class Counsel to represent the Class members;

b.     For an order declaring the Defendant's conduct violates the statutes referenced herein;

c.     For an order finding in favor of Plaintiff and the Class and Subclass on all counts asserted herein;

d.     For statutory, compensatory, and punitive damages in amounts to be determined by the Court and/or jury;

e.     For prejudgment interest on all amounts awarded;

f.     For an order of restitution and all other forms of equitable monetary relief;

g.     For injunctive relief as pleaded or as the Court may deem proper;

h.     For an order awarding Plaintiff and the Class and Subclass their reasonable attorneys' fees and expenses and costs of suit;

i.     Damages, restitution, and/or disgorgement in an amount to be determined at trial; and

j.     For such other and further relief as the Court may deem proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury on all causes of action and issues so triable.

Dated:  September 18, 2019                    Respectfully submitted,

**BURSOR & FISHER, P.A.**

By:_____*/s/ Neal J. Deckant*_____

Neal J. Deckant (State Bar No. 322946)
Frederick J. Klorczyk III (State Bar No. 320783)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-Mail:  ndeckant@bursor.com
                 fklorczyk@bursor.com

*Attorneys for Plaintiff*

**<u>CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)</u>**

I, Neal J. Deckant, declare as follows:

1.      I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court.  I am a Partner at Bursor & Fisher, P.A., counsel of record for Plaintiff in this action.  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2.      The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in the Eastern District of California.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed at Walnut Creek, California this 18th day of September, 2019.


        */s/ Neal J. Deckant*        
                Neal J. Deckant

**EXHIBIT A**

# BURSOR & FISHER
### P.A.

**1990 N. CALIFORNIA BLVD., SUITE 940**
**WALNUT CREEK, CA 94596**
**www.bursor.com**

**FREDERICK J. KLORCZYK III**
Tel: **925.300.4455**
Fax: **925.407.2700**
**fklorczyk@bursor.com**

August 23, 2019

<u>*Via Certified Mail – Return Receipt Requested*</u>

Global Widget, LLC
8419 Sunstate Street
Tampa, FL 33634

CF Registered Agent, Inc.
Re: Global Widget, LLC
100 S. Ashley Drive, Suite 400
Tampa, FL 33602

*Re:    Notice And Demand Letter Pursuant To U.C.C. §§ 2-313, 2-314, 2-607;*
*The California Consumers Legal Remedies Act;*
*The California Unfair Competition Law;*
*The California False Advertising Law; And*
*The Florida Deceptive And Unfair Trade Practices Act*

To Whom It May Concern:

This letter serves as a preliminary notice and demand for corrective action by Global Widget, LLC ("Global Widget") pursuant to U.C.C. § 2-607(3)(a) concerning breaches of express and implied warranties related to our client, Kenneth Glass, and a class of all similarly situated purchasers (the "Class") of Hemp Bombs branded products (collectively, the "CBD Products") claiming that the products purportedly contain "25mg," "50mg," "75mg," "80mg," "100mg," "125mg," "160mg," "200mg," "225mg," "250mg," "300mg," "375mg," "450mg," "600mg," "750mg," "900mg," "1000mg," "1500mg," "2000mg," or "4000mg" of CBD (collectively, the "CBD Claims").  This letter also serves as a notice of violation of the California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*; the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*; the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. §§ 501.201, *et seq.*; and all other applicable federal and state laws.

Our client purchased "Hemp Bombs CBD Gummies" and other Hemp Bombs CBD products.  Prior to purchasing his Hemp Bomb branded products, Mr. Glass reviewed information about the products, including the quantity of CBD purportedly contained in each. Mr. Glass also reviewed the accompanying labels, disclosures, warranties, and marketing materials, and understood them as representations and warranties by Global Widget that the CBD

Products contained the quantities of CBD advertised.  Mr. Glass relied on these representations and warranties in deciding to purchase his CBD Products over comparable products.  But these representations were false, and Mr. Glass did not receive the quantity of CBD he purchased. Independent lab testing reveals that the true quantity of CBD in the CBD Products is only a small fraction of these representations.  Accordingly, Global Widget breached express and implied warranties made to our client and the Class and violated the consumer protection statutes reference above.  *See* U.C.C. §§ 2-313, 2-314.

On behalf of our client and the Class, we hereby demand that Global Widget (1) issue a mandatory recall of the CBD Products, and (2) make full restitution to all purchasers of the CBD Products of all purchase money obtained from sales thereof.

We also demand that Global Widget preserve all documents and other evidence which refer or relate to any of the above-described practices including, but not limited to, the following:

1.     All documents concerning the design, packaging, labeling, and manufacturing process for the CBD Products;

2.     All tests of the CBD Products, whether performed by Global Widget or any third-party entities;

3.     All documents concerning the pricing, advertising, marketing, and/or sale of the CBD Products;

4.     All communications with customers involving complaints or comments concerning the CBD Products;

5.     All documents concerning communications with any retailer involved in the marketing or sale of the CBD Products;

6.     All documents concerning communications with federal or state regulators concerning the CBD Products; and

7.     All documents concerning the total revenue derived from sales of the CBD Products.

If you contend that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents immediately upon receipt of this letter.

Please contact me right away if you wish to discuss an appropriate way to remedy this matter.  If I do not hear from you promptly, I will take that as an indication that you are not interested in doing so.

Sincerely,

Frederick J. Klorczyk III