UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH GLASS, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GLOBAL WIDGET, LLC d/b/a HEMP BOMBS,<br><br>Defendant. | No. 2:19-cv-01906-MCE-KJN<br><br>**MEMORANDUM AND ORDER** |

Plaintiff Kenneth Glass ("Plaintiff") alleges, both on his own behalf and on behalf of others similarly situated, a nationwide collective action claim against Defendant Global Widget, LLC d/b/a Hemp Bombs ("Defendant") on grounds that hemp cannabidiol ("CBD") products sold by Defendant were both misbranded and illegal. Plaintiff's operative First Amended Complaint ("FAC") alleges eight different causes of action made on various grounds, including breach of express warranty, breach of the implied warranty of merchantability, unjust enrichment, and fraud, as well as for violations of various state consumer protection, unfair competition, and false advertising.[1]

///

---

[1] Counts V through VII of the FAC allege California statutory violations; Count VIII is for violations of Florida's Deceptive and Unfair Practices Act.

1

Presently before the Court is Defendant's Motion to Dismiss and/or Strike pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6) and 12(f). Alternatively, Defendant requests that the Court either dismiss or stay the matter pursuant to the primary jurisdiction doctrine pending imminent regulatory action by the United States Food and Drug Administration ("FDA") regarding CBD products.

As set forth below, because the Court concludes that a stay is indeed appropriate under the circumstances of this matter, Defendant's Motion (ECF No. 22) will be GRANTED in that regard but is otherwise DENIED,[2] without prejudice to refiling once the stay in this case has been lifted.

**BACKGROUND**[3]

CBD is a naturally occurring phytocannabinoid found in certain strains of hemp, and according to Plaintiff is a highly sought-after substance with medicinal properties used to treat anxiety, insomnia, depression, diabetes, PTSD and chronic pain. CBD can be ingested in numerous ways, including inhalation by smoke or vapor, as an aerosol spray into the cheek, and by mouth. In addition, food and beverage items can be infused with CBD as an alternative way of taking the substance. The production, sale and distribution of CBD has becoming a booming business that "is gaining in popularity among consumers with the legal CBD market projected to surpass $23 billion in annual U.S. Sales by 2023," according to Forbes Magazine. FAC, ECF No. 19, ¶ 12.

Defendant, a Florida corporation with a principal place of business in Tampa, Florida, manufactures, sells, and globally distributes Hemp Bombs-branded products, and is responsible for the advertising, marketing and packaging of CBD-infused edibles,

---

[2] Because the Court believes that a stay in this matter is indicated pending further action by the FDA, and since such action may profoundly change just what claims Plaintiff can assert, the Court need not address Defendant's remaining challenges to the sufficiency of Plaintiff's pleadings at this time and declines to do so.

[3] Unless otherwise noted, this section is drawn, at times verbatim, from the allegations of the FAC.

2

capsules, oils and vape products.  According to the FAC, Plaintiff, a California resident, purchased many of Defendant's Hemp Bombs CBD products throughout 2019, most recently in June of 2019,[4] when he bought two packages of Hemp Bombs Gummies from a gas station in Wheatland, California.  He states that he relied on Defendant's labeling representations concerning the quantities of CBD his purchases contained, only to later discover through testing that the products contained anywhere between 7 and 82.3 percent less CBD than stated on the label.

According to Plaintiff, Defendant also made specific representations on its website that CBD was legal to sell in the United States, when in fact it is not.  Id. at ¶¶ 22-23.  Plaintiff contends that he and other class members would not have purchased Defendant's products, or paid as much for those products, had they known the products were mislabeled and falsely advertised.  Id. at ¶ 29.

Defendant, in requesting a stay of these proceedings, claims that the FDA is poised to issue CBD regulations soon that should provide substantial clarification and guidance concerning the issues raised by this lawsuit.  It alleges that the FDA conducted a public hearing on CBD in 2019, and thereafter appointed an agency task force along with a public docket for comment.  Def.'s Mot, ECF No. 22-1, 10:15-17.  On November 25, 2019, the FDA issued a consumer update on CBD entitled "What you Need to Know (And What We're Working to Find Out) About Products Containing Cannabis or Cannabis-derived Compounds, Including CBD."  The agency stated it "recognizes the significant public interest" in such compounds, and "is working on answering these questions through ongoing efforts including feedback from a recent FDA hearing and information and data gathering through a public docket."  See Def.'s Mot., 10-15-11:2, n.4 and citations contained therein.[5]  The FDA further advised that the agency "is evaluating the regulatory frameworks that apply to certain [CBD products] that

---

[4] While the FAC indicates these last purchases occurred in July 2019, Plaintiff indicates in his Opposition to the instant Motion that this was a scrivener's error, with the correct time being June of 2019.

[5] Whether or not the FDA considers CBD to be a dietary supplement remains in dispute according to Defendant, since the Agency has to date issued mixed messages on the issue.

3

are intended for non-drug uses, including whether and/or how the FDA might consider updating its regulations, as well as whether potential legislation might be appropriate." Id.

The FDA's efforts to provide further guidance to the public continue.  On January 13, 2020, the Chairman of the House Agricultural Committee, Collin Peterson (D-MN), introduced bi-partisan legislation (H.R. 5587) that would allow hemp-derived CBD (and substances containing CBD) to be marketed as dietary supplements, and would require the FDA to immediately develop regulations to that effect.[6]  Defendant also claims that regulatory efforts with important potential ramifications for this case are underway in California, where the California Assembly has passed A.B. 228, which would declare that foods (including dietary supplements), beverages and cosmetics made with industrial hemp should not be considered adulterated, as Plaintiff alleges. See id. at 11:7-10, citing FAC at ¶¶ 24-25.  Defendant claims the Bill is currently pending before the California Senate.

## STANDARD

It is well-established that "[a] district court 'has broad discretion to stay proceedings as an incident to its power to control its own docket' in an effort to promote judicial economy."  DeMartini v. Johns, 693 F. App'x 534, 538 (9th Cir. 2017) (quoting Clinton v. Jones, 520 U.S. 681, 706-707 (1997)); see also Landis v. North Am. Co., 299 U.S. 248, 254-55 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the dispositions of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants.  How this can be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.").

///

---

[6] See https://www.congress.gov/bill/116th-congress/house-bill/5587.

In determining the propriety of a stay, courts look to issues of judicial economy and the prejudice to either party that may result if the stay is granted or denied. CMAX, Inc. v. Hall, 300 F.2d 265, 268 (9th Cir. 1962). Whether to issue a stay in this regard is a decision necessarily relegated to the court's discretion. Nken v. Holder, 556 U.S. 418, 433-34 (2009).

## ANALYSIS

On May 22, 2020, the Northern District of California issued its decision in Colette v. CV Sciences, Inc., No. 2:19-cv-10227-VAP-JEM(x), 2020 WL 2739861.[7] Colette, like the present matter, is a class action relating to the marketing and sale of CBD products. Also similar to the case at bar, the plaintiff in Colette argues that she would not have purchased products containing CBD if she knew they were not legally sold in the United States. Id. at *1.[8]

The Northern District ultimately stayed the litigation pending before it, citing the so-called "primary jurisdiction" doctrine. Importantly, the court noted that its case was one of several cases already pending that relate to the marketing and sale of CBD products, including four similar cases in the Northern and Central Districts alone. Id.

"The primary jurisdiction doctrine allows courts to stay proceedings, or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency." Clark v. Time Warner Cable, 523 F.3d 1110, 1114 (9th Cir. 2008). It "is a prudential doctrine under which courts may, under appropriate circumstances, determine that the initial decisionmaking responsibility should be performed by the relevant agency rather than the courts." GCB

---

[7] While decided on May 22, 2020, after briefing in this matter concluded on March 16, 2020, defense counsel brought Colette to the Court's attention by filing a Notice of Supplemental Authority attaching the decision on June 3, 2020. Plaintiff's counsel has filed nothing in response to that submission.

[8] It does not appear, however, that the Colette case contained evidence of misbranding like this matter.

Communications, Inc. v. U.S. South Communications, Inc., 650 F.3d 1257, 1263-64 (9th Cir. 2011). As the GCB Communications court noted, the doctrine is useful "in instances where the federal courts do have jurisdiction over an issue, but decide that a claim requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency." Id. at 1264.

Courts consider the following non-exhaustive factors in deciding whether the primary jurisdiction doctrine applies: "(1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration." Syntek Semiconductor Co., Ltd. v. Microchip Tech, Inc., 307 F.3d 775, 781 (9th Cir. 2002).

Colette found that consideration of these facts required applying the primary jurisdiction doctrine given ongoing FDA activities in clarifying its position on CBD, and this Court finds its reasoning in that regard persuasive. As the Northern District observed, these cases raise "issues of first impression surrounding how the FDA intends to classify and regulate the CBD." 2020 WL 2739861 at *4. In addition, as Colette went on to note, the only federal court to have addressed similar issues also invoked the primary jurisdiction doctrine. That court was Southern District of Florida in Snyder v. Green Roads of Florida, LLC, 430 F. Supp. 3d 1297 (S.D. Fla. 2020), a decision extensively relied upon by Defendant in its brief opposing this Motion. Colette adopted the "thoughtful" analysis of Snyder in invoking the primary jurisdiction doctrine, and this court concurs. As Snyder explained:

> "First, it appears to the Court that the FDA is exercising regulatory authority over ingestible and other CBD products, but there is uncertainty with respect to whether the FDA will conclude that some or all CBD products are food additives, supplements or nutrients that can be safely marketed to the public and, if nutrients, whether the labelling standards and requirements for CBD products will be different or the same as for other nutrients. Thus, there appears to be a need for consistent guidance. Second, the FDA appears to be properly exercising their regulatory authority; the FDA regulates, among other matters, food additives, supplements

> and nutrients, and because ingestible CBD products could be deemed to fall into any of those categories, they are within the FDA's jurisdiction. Third, the Agriculture Improvement Act of 2018 (the "2018 Farm Bill"), explicitly recognized the FDA's authority to regulate products containing cannabis-derived compounds, including hemp-derived products under the FDCA. Fourth, the exercise of regulatory authority by the FDA over the labelling of ingestible CBD products requires both expertise and uniformity in administration. The need is well-illustrated by the fact that, among other issues with which the FDA is concerned, are whether CBD products pose safety risks, how the mode of delivery affects safety, whether there are dosage considerations related to safety, whether there is a need for manufacturing standards, and whether there are standardized definitions for the ingredients, in, for example, hemp oil. Lastly, the FDA obviously has expressed an active interest in regulating the manufacture and marketing of CBD products.

430 F. Supp. 3d at 1308 (as quoted by Colette, 2020 WL 2739861 at *5, internal citations omitted).

Additionally, the plaintiff in Colette argues, as Plaintiff does here, that any forthcoming regulatory action by the FDA cannot be retroactively applied to class claims accrued prior to enactment of any new rules. Any presumption against retroactivity, however, may be overcome by statutory authorization. Colette, 2020 WL 2739 at *5. As Colette notes, whether cannabis regulations will apply retroactively is unknown, but given the widespread use and sale of CBD products—and particularly the large number of states that have legalized their sale—Congress may conclude that fairness, practicality, and comity require retroactive legislation." Id.

The FDA, as Colette recognized, "is working feverishly" to develop rules concerning the regulation of CBD. Id. Consequently, since this Court agrees with Colette and Snyder that the doctrine of primary jurisdiction applies, it should either "stay the case pending an administrative ruling or dismiss the case without prejudice." Capaci v. Sports Research Corp., No. CV 19-3440 FMO (FFMx), 2020 WL 1482313 at *8 (C.D. Cal. 2020). When a court concludes that further proceedings are contemplated, a stay is indicated. Astiana v. Hain Celestial Group, Inc., 783 F.3d 753, 760 (9th Cir. 2015). Here, as in Colette, the fact that further judicial proceedings in this matter are

indeed contemplated mandates that a stay, as opposed to the complete relinquishment entailed by a dismissal, be effected.  <u>Colette</u>, 2020 WL 2739 at *5.

## CONCLUSION

For all the foregoing reasons, the Court will stay this lawsuit until such time as the FDA completes its rulemaking regarding the marketing, including labelling, of hemp-derived ingestible products.  Defendant's Motion (ECF No. 22) is consequently GRANTED[9] to the extent it requests the above-referenced stay.  Given the Court's decision to stay this matter, however, the remaining portions of said Motion, which ask the Court to dismiss and/or strike portions of the proceedings, are DENIED without prejudice to being renewed once the stay in this case has been lifted.

The parties are directed to notify the Court within ten (10) days after the expected FDA regulations are issued.  In the meantime, the parties shall file joint status reports with the Court every ninety (90) days, beginning on September 15, 2020.

IT IS SO ORDERED.

Dated:  June 15, 2020

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE

---

[9] Having determined that oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs in accordance with E.D. Local Rule 230(g).

8